AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
## for the
### District of Nebraska

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2019 MAY 21  AM 11: 01

OFFICE OF THE CLERK

| | |
|---|---|
| In the Matter of the Search of<br><br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>AN APPLE iPHONE 7, MODEL MNAC2LL/A, SERIAL #<br>DNWV3G3GHG7W THAT IS STORED AT PREMISES<br>CONTROLLED BY THE SIOUX CITY FBI | )<br>)<br>)<br>)    Case No.  8:19MJ249<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____Nebraska_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2242(2), 1153 | Sexual abuse of incapable victim |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

JEFFREY HOWARD, S.A. FBI
*Printed name and title*

☑ Sworn to before me and signed in my presence. _____

☐ Sworn to before me by telephone or other reliable electronic means.

Date: ___5/21/19___

_____
*Judge's signature*

City and state:  Omaha, Nebraska

F.A. GOSSETT, III, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

IN THE MATTER OF THE SEARCH OF
AN APPLE iPHONE 7, MODEL
MNAC2LL/A, SERIAL #
DNWV3G3GHG7W THAT IS STORED AT
PREMISES CONTROLLED BY THE
**SIOUX CITY FBI**

Case No. 8:19MJ249

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Jeffrey Howard, being duly sworn, depose and say:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for

information associated with a certain cellular telephone, further described as an Apple iPhone 7,

Model MNAC2LL/A, Serial # DNWV3G3GHG7W, with pin passcode 070710, assigned call

number **(402) 385-8772**, ("the SUBJECT'S PHONE"), that is stored at premises controlled by

FBI SIOUX CITY. The information to be searched is described in the following paragraphs.

2.      That I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI),

and have been so employed since January 31, 1999. Since July 2, 2007, I have been primarily

assigned to the Omaha, Nebraska, FBI Division, to include the Sioux City, Iowa, Resident

Agency. In the course of my official duties, I am charged with the investigation of crimes

occurring on the Indian Reservations of Nebraska, including the Winnebago Indian

Reservation, located in Thurston County, Nebraska, within the District of Nebraska. The

information contained in this affidavit is the result of investigation conducted by me, and officers

of the Winnebago Police Department, in Winnebago, Nebraska.

3.      The statements in this affidavit are based upon my experience and background as

a Special Agent of the FBI and upon my investigation, and the review of the pertinent reports

and evidence collected to date. Because this affidavit is being submitted for the limited purpose

of securing a search warrant, I have not included each and every fact known to me concerning

this investigation. In support of the search warrant, I have set forth only the facts necessary to

establish probable cause to believe that Christopher Angelo Clay (hereinafter Clay), a 30 year

old Native American male, date of birth May 5, 1989, an enrolled member of the Three

Affiliated Tribes of North Dakota, committed a violation of federal law, specifically Title 18,

United States Code, Sections 2241 and 2242 and probable cause to believe that a search of his

mobile phone will reveal evidence thereof.

## PROBABLE CAUSE

4.      On April 22, 2019, Winnebago Chief of Police (COP), Jason Lawrence, notified

SA Howard that the Winnebago Police Department received a report of sexual assault from a

Native American female, Darilyn Corrine-Quien Duong (hereinafter Duong), date of birth

December 30, 2000, enrolled with the Winnebago Tribe of Nebraska. Duong reported that she

had been drinking a good portion of the afternoon of April 22, 2019 at various locations on the

Winnebago Indian Reservation, in Winnebago, Nebraska, and ended up at the apartment of a

friend, Shaya Porter, who resides at the Warrior Apartments, 508 Reuben Snake Drive,

Apartment # 210, Winnebago, Nebraska, within the exterior boundaries of the Winnebago Indian

Reservation. Duong was interviewed at the Winnebago Police Department on April 23, 2019.

Duong stated she had a lot to drink and reported she later registered .255 on a Preliminary Breath

Test device administered to her by COP Lawrence (COP Lawrence confirmed this reading,

which he took after the police were notified about the sexual assault). Once at Porter's

apartment, Duong fell asleep on the living room couch. When Duong came to she found Chris Clay to be on top of her, on the couch, having penile/vaginal sex with her. Duong stated she did not recall giving Clay consent to have sex with her and tried to push Clay off. Duong described herself as "freaking out," which she later defined as "screaming, he raped me!" Duong confirmed that she did not feel she had been in any condition to give Clay consent. Duong added that she has never dated Clay, nor ever expressed an interest in him romantically.

5.      Duong stated she did not recall her clothing being removed, but remarked that her underwear was hanging out of her ripped pants on one leg. COP Lawrence confirmed this stating that when he first contacted Duong, Duong's underwear did not appear to have been on correctly. COP Lawrence explained that Duong's underwear was only on one leg and the other side was hanging out a rip in her pants. It should be noted that Duong's style of pants is the ripped thigh variety and not a result of the assault. When asked if Clay had "finished" Duong said she did not know, but that Clay's condom broke. When asked how she knew that, Duong stated that it had been communicated to her by Clay via a social media app known as Snapchat on or about May 22, 2019. Upon reviewing and photographing Duong's Snapchat messages with Clay, there is no mention of a condom or of a condom breaking. However, there are several references by Duong stating she had been drinking heavy, she was drunk, and did not remember anything. Clay encouraged her to talk to the police, telling Duong he was supposed to meet with the police at 11:00 AM. Duong showed up at the police department at approximately 10:30 AM, unannounced. Duong stated she was having a Snapchat conversation with Clay while she was talking to investigators. Duong went on to say she did not recall having the conversations Clay told her they had in the Snapchat messages between them. Duong stated she also had a verbal

conversation with Clay over the phone about the condom breaking. Duong reiterated that she was only using Snapchat to communicate with Clay, other than regular cell phone conversations.

6.     Duong stated that after she found Clay on top of her and screamed that he had raped her, Duong went into the bedroom of Porter and told porter that Clay had raped her. Porter said that was a serious allegation and that the police should be called. Duong thinks that is about the time the Clay left the apartment, but she was uncertain exactly when Clay left.

7.     A screen shot of Duong's cell phone shows she received a call from Clay's number, 402-385-8772 at 10:23 AM on April 23, 2019.

8.     Chris Clay was contacted behind the Heritage gas station in Winnebago on April 23, 2019 at 11:30 AM. Clay stated he had been hanging out and drinking with friends on April 22, 2019, including Duong, Shaya Porter, Antonio Baker, Miguel Baker, and Austin LaPointe. Later in the evening, between 8:00 and 9:00 PM, Duong and LaPointe were dropped off at Porter's apartment. Prior to that Clay stated that Duong "was kind of drunk, because she was like slurring and like saying all kinds of crazy shit." Porter and Clay and the Bakers then left to go to another party and returned before midnight. Clay estimated his level of intoxication to be a six or seven on a ten scale. LaPointe went into the bedroom with Porter, leaving Clay and Duong on the couch. According to Clay, Duong asked Clay not to leave her by herself. Clay stated he and Duong talked and then started kissing and that "one thing led to another." Clay asked Duong if she was sure she wanted to have sex and Duong said, "Yes." Clay claimed Duong was speaking clearly. Duong pulled off one leg of her pants and then pulled Clay's pants down. Clay said he asked Duong again, "Are you sure you want to do this?" and Duong said, "Yes." Clay and Duong had penal/vaginal sex on the floor, with a condom that Clay said broke. When the condom broke Clay told Duong they should stop having sex and Duong agreed. After having

sex, Duong went into the bedroom with Porter and LaPointe and Clay left the apartment to talk to a friend next door. Clay stated he learned later on April 22, 2019 from an ex-girlfriend, Jahlynn Walker, that Duong was alleging Clay had raped her.

9. Clay stated he received a Snapchat message from Duong on the evening of April 22, 2019, stating, "I'm sorry about everything." Clay allowed investigators to photograph messages on his cell phone exchanged with Duong via Snapchat. Clay reiterated that the sex he had with Duong was consensual. Clay admitted that Duong had probably drunk as much alcohol as Clay did, but also admitted he was about twice Duong's size.

10. Clay volunteered that approximately two hours before having sex with Duong, while Duong and LaPointe were sleeping on the couch, Clay went into Porter's room and had penal/vaginal sex with Porter, using a condom. Clay stated he happened to have two condoms with him that night.

11. During the investigation, Clay was asked if he communicated with anyone else regarding the incident and allegations. Clay said he spoke on the phone with Jahylynn Walker regarding the allegation and that was how he found out about it. He said it was a verbal telephonic conversation. Porter told investigators that she heard that Duong had recanted the rape allegation from a "close friend." When asked who the close friend was, Porter said, "Chris said that Darilyn messaged him last night and she said that she was sorry and that she didn't want to ruin his life and she did not know what she was talking about and she was really drunk." When asked if she saw the message, Porter said, "No. it was through a phone call. He just read it to us."

12. On May 9, 2019, Kierra Rave was contacted at her residence at the Little Priest Apartments, a short distance from the Warrior Apartments, on the Winnebago Indian Reservation. Rave stated that sometime between 10:00 PM and 11:00 PM on April 22, 2019,

Duong came to her apartment crying and distraught. Duong told Rave that she had been sleeping

on the couch at Porter's apartment and woke up to Clay on top of her and having sex with her.

Duong did not go into detail with Rave as to what exactly Clay had done to Duong. Rave also

noticed that Duong was intoxicated and her underwear was sticking out of a rip in her jeans.

Duong did not seem to notice that her underwear was hanging out until Rave pointed it out to

her. Duong did not do anything about it. Rave then called the police for Duong.

13.     COP Lawrence obtained Clay's cell phone on April 29, 2019 following Clay's

arrest on a tribal warrant for the sexual assault. Your affiant obtained the cell phone from COP

Lawrence on April 30, 2019. Clay provided his pass code to the phone via consent on April 30,

2019. Your affiant placed the Apple iPhone 7 in airplane mode and has not viewed the contents

of the phone. On May 2, 2019, your affiant went to the Macy Jail to speak to Clay. SA Howard

advised Clay of his rights using the standard FBI FD-395 Advice of Rights Form. Clay

consented to be interviewed. SA Howard requested Clay sign a consent form for a search of his

phone. Clay declined to provide consent, stating that he wanted to consult with a lawyer.

## AUTHORIZATION REQUEST

14.     Based on the foregoing information, your affiant is requesting to search the Apple

iPhone belonging to Clay. Clay used his phone to communicate with Duong about the sexual

encounter and has also discussed the situation with friends, to include those who were present

while the group was drinking and while the group was inside Porter's apartment. I have reason to

believe the phone will contain information related to the sexual assault and am seeking

authorization to view the contents of the cell phone for evidence of same. This will include

opening the Snapchat application and viewing conversations available to view.

15.    I am also seeking authorization to view anywhere within the phone that I am able

to access for further evidence related to the investigation of this crime. That would potentially

include text message, iMessages, Facebook Messenger messages, or other platforms that I know

from experience are commonly used for communication on the Winnebago Reservation.

Respectfully submitted,

JEFF HOWARD
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on_____MAY 21_____, 2019

F.A. GOSSETT, III
UNITED STATES MAGISTRATE JUDGE



AO-93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of Nebraska

| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) |   Case No.   8:19MJ249 |
| AN APPLE iPHONE 7, MODEL MNAC2LL/A, SERIAL # | ) |
| DNWV3G3GHG7W THAT IS STORED AT PREMISES | ) |
| CONTROLLED BY THE SIOUX CITY FBI | ) |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____Nebraska_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____June 4, 2019_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____F.A. GOSSETT, III_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:    5/21/19   10:58AM

City and state:    Omaha, Nebraska

_____
Judge's signature

F.A. GOSSETT, III, U.S. Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>  8:19MJ249 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____       _____
                                                       *Executing officer's signature*

                                                       _____
                                                       *Printed name and title*